Memorandum of Decision
On October 5, 1999 the Department of Children and Families (DCF) filed a petition for termination of the parental rights of Tammie A, respondent mother and Noel H and Rick C, putative fathers of Jaali A.-H.[2]
Service of the petitions for termination of parental rights for both Tammie A and Rick C was done via publication in the New Haven Register. CT Page 8243 Both Tammie A and Rick C failed to appear for court on the October 25, 1999 plea date. A default for nonappearance was entered and the case continued for a case status conference on January 11, 2000. The court action sheet of January 11, 2000 reflects that Tammie A arrived to the courthouse after the case was heard in court. She was nonetheless given a copy of the petition and summary of facts and an opportunity to apply for counsel. Counsel was appointed for respondent mother on January 18, 2000. Respondent father Rick C never appeared for any court proceedings on the petition for termination of parental rights and therefore counsel was not appointed to represent him on the termination petition.[3]
On March 16, 2000 a judicial pretrial was held.[4] There was no agreement reached and the case was scheduled for a trial on May 11, 2000.
This court has jurisdiction in the matter and there is no pending action affecting the custody of Jaali A.-H. in any other court. The grounds alleged for said termination of parental rights are abandonment, failure to rehabilitate and no ongoing parent-child relationship as to both respondent mother and respondent father. For the reasons set forth below the court now grants the termination petition.
The court, having read the petition, the social study and the various documents entered into evidence, and having heard the testimony of the witnesses, finds the following facts and credits the following evidence.
Jaali A.-H. was first removed from parental care on a 96 hour hold on September 19, 1998. An order of temporary custody was obtained and subsequently confirmed. The need for the order of temporary custody arose from respondent mother leaving Jaali with Noel H who in turn left the child with a maternal aunt. Police were called as well as the maternal grandparents. The child required admission to the hospital for respiratory difficulty and upon the child's discharge Tammie A and Rick C's whereabouts were unknown. The infant was therefore placed in foster care.[5]
The child was found to have been neglected and committed to the Department of Children and Family on March 22, 1999. Respondent parents' whereabouts were unknown at the time. The commitment has continued without interruption and extended until March 22, 2001.[6]
Termination Adjudication
A. Reunification
In order to terminate parental rights, it must initially be shown by CT Page 8244 clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Statute Sec. 17a-112(c)(1). There is clear and convincing evidence in this case that DCF made reasonable efforts to locate the parents and to reunify the child and the parents.
At trial DCF social worker Kathleen Schultz testified that respondent mother had a conversation with a DCF supervisor on September 29, 1998 and was told of the October 2, 1998 court date. A referral was made to the APT Foundation to address respondent mother's substance abuse. Tammie A did not follow through with the evaluation. A referral was made to 4-C's for domestic violence services in October of 1998. Tammie A did not avail herself of the services and was discharged. DCF never heard from the respondent mother again until October 25, 1999. During that more than one year absence DCF attempted to locate respondent mother by contacting the Department of Corrections, sending letters to last known addresses, sending letters to the last known address of maternal grandmother, the mother of respondent mother, publishing in the newspaper, contacting DCF's Revenue Enhancement Department, telephone directory, and 411 telephone directory assistance. The DCF worker in September of 1999 spoke to the respondent mother's step mother who indicated that she and her husband had last seen Tammie A once three to four months ago on the streets.
In October of 1999 respondent mother contacted DCF to inquire as to Jaali's well being. Tammie A stated she was not surprised that termination of parental rights petitions had been filed. Tammie A told DCF that she was still unable to care for Jaali because respondent mother still had issues that she needed to address. Tammie A also told the social worker that she had no stable housing.
DCF did not have any further contact with the respondent mother until the court date of January 11, 2000. Kathleen Schwartz had told respondent mother about the January 11, 2000 court date during their October 25, 1999 telephone conversation. In January of 2000 DCF referred respondent mother to the Central Treatment Unit (CTU) to address her substance abuse. Tammy A did attend an evaluation and attend some treatment sessions but she continued to test positive for cocaine and was subsequently discharged for noncompliance.[7] Respondent mother was incarcerated in March of 2000 on a violation of probation warrant and released in early May of 2000 under strict conditions from the adult drug court.
DCF made reasonable efforts to find the respondent mother and to offer CT Page 8245 her services once the mother resurfaced over a year later. DCF has met its burden of proof as to respondent mother.
DCF completed a diligent search as to Rick C. In October of 1999 DCF contacted Laz Parking Limited in Hartford, Mr. C's last known place of employment. DCF was informed that Mr. C did not work at that business. This court finds by clear and convincing evidence that DCF made reasonable efforts to locate Rick C.
B. Statutory Grounds
The grounds alleged as the basis for the termination of parental rights in this case is abandonment, the parents' failure to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parents could assume a responsible position in the life of the child, and no ongoing parent-child relationship. For the following reasons the court finds that DCF has proved by clear and convincing evidence all three alleged statutory grounds as to Tammie A and abandonment and no ongoing parent-child relationship as to Rick C.
1. Abandonment
A child is deemed abandoned when a" parent fails to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child." C.G.S. Sec. 17a-112 (c)(3)(A). Attempted contact, either directly or indirectly is evidence of a parent's interest or concern in a child. But when a parent has no contact with a child or makes no inquiry regarding the child, statutory abandonment exists. In reMigdalia M., 6 Conn. App. 194, 208-209, 504 A.2d 533, cert denied,199 Conn. 809, 508 A.2d 770 (1986).
Tammie A left Jaali with Noel H on or about September 18, 1998. She spoke with a DCF supervisor on or about September 29, 1998. DCF never heard from respondent mother again until October of 1999. Jaali was two months old when she was last seen by her biological mother. There were no visits, no cards, no gifts, no telephone calls.
Rick C has never seen Jaali at least not since the child was placed in foster care in 1998. He failed to appear for three scheduled paternity tests. He never supported the child nor did he cooperate with or contact DCF.
DCF has proven the ground of abandonment against both Tammie A and Rick C by clear and convincing evidence. CT Page 8246
2. Failure to Rehabilitate
A second statutory ground for termination of parental rights exists when "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." C.G.S. sec. 17a-112 (c)(3)(B)(1). Jaali was adjudicated neglected in March of 1999.
Respondent mother suffers from a long standing substance abuse problem, a history of violence, criminal involvement with repeated periods of incarceration and unstable housing. Although at the time of trial respondent mother testified that she had been drug free since March 15, 2000, the court's analysis must encompass a time line consistent with the needs of the child.
Jaali has been in foster care since two months of age. There was no evidence of rehabilitation on the part of respondent mother prior to the filing of the termination of parental rights petition in October of 1999. Because the court must predict what will happen within a "reasonable time" after the filing of the termination petition, this court considers the respondent mother's conduct after the petition was filed. In re Amber B. 56 Conn. App. 776, 785 (2000). This court applauds respondent mother's recent sobriety and involvement with adult drug court. But this court must also find that Jaali has spent all but two of her twenty four months of life in foster care. No further amount of time is "reasonable" for Jaali to wait in foster care to see if respondent mother can continue to succeed in her rehabilitation efforts. DCF has proven by clear and convincing evidence the statutory ground of failure to rehabilitate as to respondent mother.
DCF has not met its burden of proof as to Rick C under the statutory ground of failure to rehabilitate.
3. No Ongoing Relationship
The final statutory ground alleged in this case is that there is "no ongoing parent-child relationship, which is the relationship that develops as a result of parents meeting the day to day physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." C.G.S. sec. 17a-112(c)(3)(D). The issue that must be addressed under this statutory framework is "regardless of fault, a child either has never CT Page 8247 known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displace." In re JuvenileAppeal (Anonymous), 181 Conn. 638, 645, 436 A.2d (1980).
Jaali was two months old when she last had contact with her biological mother. Jaali has not had any contact with Rick C at least for twenty two out of her twenty four months of life. Given the child's tender years the child would be unable to have any memories or feelings for the respondent parents. The DCF worker testified that Jaali calls the foster parents mom and dad. DCF has met its burdern of proof regarding the statutory ground of no ongoing parent-child relationship.
Disposition
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that `termination is in the best interest of the child.' C.G.S. sec. 17a-1 12 (c)(2). The court may consider all events occurring through the close of the dispositional hearing.
The best interest of Jaali clearly and convincingly requires termination of the parental rights of Tammie A. and Rick C.
The court, in arriving at the decision to terminate parental rights must consider and make written findings regarding seven factors. C.G.S. sec. 17a-112 (e).
(1) This court must look at the timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent. As is evident in the preceding part of this opinion there were efforts put forth to provide Tammie A. with services so that reunification could be possible. Tammie A. did not avail herself of the services offered in 1998 and both her and Rick Cinwere whereabouts unknown for the majority of the time that the termination petitions were pending.
(2) This court finds that DCF made reasonable efforts to reunite the parents with the child pursuant to the federal Adoption Assistance and Child Welfare Act of 1980. For the reasons set forth previously the court finds that DCF offered appropriate services and sufficient time for Tammie A. and Rick C. to reunify with Jaali.
(3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order must also be CT Page 8248 addressed. Tammie A. and Rick C. non appearance in court at the time of the order of commitment and their unknown whereabouts made agreed upon court ordered expectations impossible.
(4) The feelings and emotional ties of the child with respect to her parents, any guardian of her person and any person who has exercised physical care, custody or control of the child for at lease one year and with whom the child has developed significant emotional ties must be discussed.
Jaali calls her present foster parents mom and dad. Jaali is bonded to her foster parents and they have expressed a desire to adopt Jaali. Jaali has no emotional ties to Tammie A or Rick C.
(5) Jaali is now two years old. She is entitled to leave the limbo of foster care she has been forced to live in for twenty two of the twenty four months of her life.
(6) The efforts the parent has made to adjust her or his circumstances or conditions to make it in the best interest of the child to return her to her home in the forseeable future, including but not limited to; (A) the extent to which to the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communication or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
It is unnecessary to restate Tammie A. or Rick C's lack of engagement with Jaali from the time the child was initially placed in foster care to the present. Rick C denied paternity but failed to submit to court ordered paternity tests. The court credits respondent mother's testimony at trial that she is genuinely now motivated to stay substance abuse free and to carve out a life that would allow Jaali to be returned to her. Her reappearance and recent changes in lifestyle, while commendable, are too little too late for this court to accord her any more time to rehabilitate given Jaali's protracted stay in foster care.
(7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person, or by economic circumstances of the parent.
It was Tammie A. and Rick C's choice and nothing else that prevented a meaningful relationship to exist between the parents and the child.
Conclusion
CT Page 8249
The court finds, based upon the testimony and evidence presented and a review of the court file that clear and convincing evidence exists that it is in Jaali's best interest to terminate the parental rights of Tammie A and Rick C. These findings are made after considering Jaali's needs, the length of time she has been in foster care, her need for permanency and the totality of the circumstances surrounding Jaali's young life.
Accordingly, the court hereby grants the termination petitions. The court further orders that the Commissioner of DCF be appointed statutory parent for the child. A permanency plan for Jaali shall be submitted to the court within thirty days. A review plan shall be filed in accordance with state and federal law.
Bernadette Conway, Judge